Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 461 | DATE | 10/25/2000 |
| CASE TITLE | Central States, Southeast et al. Vs. Manning Motor Express, Inc. et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For reasons as above set forth, plaintiffs' motion is granted, and defendants' motion is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 25 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 00 OCT 25 PM 2: 46 | date mailed notice |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee,<br><br>Plaintiffs,<br><br>vs.<br><br>MANNING MOTOR EXPRESS, INC., A-1 EXPRESS, INC., K-T EXPRESS, INC., and BOWLING GREEN EXPRESS, INC.,<br><br>Defendants. | No. 97 C 461 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall (collectively "Central States") bring this action under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA), 29 U.S.C. § 1001 *et seq.*, to collect interim withdrawal liability payments from defendants Manning Motor Express, A-1 Express, K-T Express and Bowling Green Express (collectively "Manning"). Central States contends that Manning must make interim payments while Manning is contesting that liability in arbitration. Manning argues that Central States' claim is frivolous and that interim payments will irreparably harm the companies. After extensive efforts to resolve the matter without further litigation were unsuccessful, the parties filed cross motions for summary judgment. For the reasons below, plaintiffs' motion is granted, and defendants' motion is denied.

## BACKGROUND

The material facts are undisputed. Central States is a multi-employer pension plan. Manning was one of its participating members. Because one employer's withdrawal could force the plan's other participants to bear a disproportionate share of any unfunded vested benefits (UVBs), MPPAA requires the withdrawing firm to pay a penalty equal to its share of the UVBs. *See* <u>Central States, Southeast and Southwest Areas Pension Fund v. Holloway Construction Co.</u>, 2000 WL 126893 (N.D. Ill. Feb. 1, 2000). On May 30, 1990, Central States determined that Manning, due to its declining contributions, had partially withdrawn from the fund in 1984, and assessed Manning for withdrawal liability. Manning contested this assessment through arbitration, which is still pending, and has not paid that liability. Due to further declining contributions, Central States determined that Manning had again partially withdrawn from the fund effective December 31, 1993, and had fully withdrawn effective December 31, 1994. Accordingly, on April 24, 1995, Central States sent notice and demanded Manning pay a new withdrawal liability. Manning requested that Central States review this determination, but Central States' board affirmed the assessment. Manning requested arbitration on October 25, 1995, and has refused to make interim payments pending the arbitrator's ruling.

## DISCUSSION

Congress has prescribed very specific rules for resolving disputes between pension funds and employers over withdrawal liability. The parties must submit the issue to arbitration, 29 U.S.C. § 1401, and the employer must make interim payments pending a ruling. 29 U.S.C. § 1399(c)(2). The general rule under ERISA is "pay now, arbitrate later." <u>Central</u>

States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc., 155 F.3d 868, 875 (7th. Cir. 1998). The statutory mandate is particularly clear with respect to interim payments. "[E]nforcement of interim payments is a relatively mechanical statutory obligation for the courts, and not the occasion for an extended factual inquiry." Debreceni v. Merchants Terminal Corp., 740 F. Supp. 894, 898 (D. Mass. 1989), *quoted in* Central States, Southeast and Southwest Areas Pension Fund v. Ten D. Inc., 1992 WL 77790 at *2 (N.D. Ill. Apr. 2, 1992).

This case focuses on a narrow exception to the interim payment rule carved by the Seventh Circuit in Robbins v. McNicholas Transp. Co., 819 F.2d 682 (7th Cir. 1987). If the fund's claim is frivolous, and making the interim payments would irreparably harm the employer, then the court has the discretion to decline to order them. *See id.* at 685. Central States raises three arguments in response: there is no such exception, their claim is not frivolous, and Manning has not proven it will suffer irreparable harm.

First, Central States disputes that there is an exception at all. They point to language in a later Seventh Circuit opinion that appears to undermine McNicholas' reasoning. *See* Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Central Transport, Inc., 935 F.2d 114, 118 (7th Cir. 1991) ("Our conclusion above ... calls this statement [in McNicholas] into question."). Moreover, plaintiffs emphasize, though many employers have raised this issue, no court has actually declined to order interim payments on McNicholas grounds. Nonetheless, McNicholas is still good law in this circuit.[1] Central

---

[1] That other circuits may have criticized or rejected McNicholas is irrelevant. It is binding precedent here.

Transport may have construed the exception narrowly, but the Seventh Circuit has never expressly rejected it. In fact, Central Transport and its progeny appear to validate that a narrow exception exists. *See* 935 F.2d at 119 ("McNicholas is at most a recognition that if the fund's claim is frivolous ... then the plan is engaged in a ploy *that a court may defeat*.") (emphasis added); Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Rentar Indust. Inc., 951 F.2d 152, 155 (7th Cir. 1991) (applying test). And courts in this district regularly apply the test.[2] *See, e.g.*, Holloway Construction, 2000 WL 126893 at *2; Bridge v. Wright Indus., Inc., 995 F. Supp. 922, 927 (N.D. Ill. 1998). The fact that no employer has satisfied the test yet does not mean the test is invalid.

Next, we apply the test to the instant case. Central States challenges both prongs, and there is some disagreement within this district as to which we should analyze first. *Compare* Holloway Construction, 2000 WL 126893 at *2 (examining frivolity first) and Central States, Southeast and Southwest Areas Pension Fund v. National Cement Products Co., 1998 WL 26186 at *3 (N.D. Ill. Jan. 16, 1998) (same) *with* Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc., 1996 WL 467231 at *6 (N.D. Ill. Aug. 15, 1996) (harm first) and Banner Indust., Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 663 F. Supp. 1292, 1297 (N.D. Ill. 1987) (same). We find the Holloway and National Cement approach preferable. *See* Rentar, 951 F.2d at 155 ("We hold here that irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim."). Ultimately, this makes no difference. An employer must satisfy

---

[2] Plaintiffs defeat their own argument by string-citing post-Central Transport cases that both recognize and apply the McNicholas exception. *See* Plaintiffs' Reply at 5 n.3.

both elements, frivolity *and* irreparable harm. Because failure to meet one is dispositive, the order in which we analyze them does not much matter.

The frivolity argument is really the meat of the exception. ERISA is not designed to protect employers on the brink of bankruptcy. Quite the opposite, the very reason for requiring interim payments is to prevent a struggling firm from leaving other employers on the hook for its own share of UVBs. *See* Central Transport, 935 F.2d at 118. When both frivolity and irreparable harm are combined, however, there is a real risk of abuse. An unscrupulous pension fund could extort money from a precariously financed employer who cannot afford to make interim payments while arbitrating the assessment.[3] In that circumstance, declining to order interim payments in no way contravenes Congress' intent. *See id.* at 119. If the claim is frivolous, then the assessed firm does not owe the fund anything, and there is no risk to the other fund participants.

Manning claims that Central States' assessment has no legal grounding and will surely fail before the arbitrator. Defendants must make an affirmative showing that the claim has no merit. *See* Rentar, 951 F.2d at 155. And this is a stringent standard. "A claim is frivolous if it has no arguable basis in law and fact." Central States, Southeast and Southwest Areas Pension Fund v. Matlack Sys. Inc., 1998 WL 792485 at *2 (N.D. Ill. Nov. 10, 1998), *citing* Talley v. Lane, 13 F.3d 1031, 1033 (7th Cir. 1994). We may only excuse interim payments if "the arbitrator is almost certain to rule for the employer." Central Transport, 935 F.2d at 119. Manning cannot meet this burden.

The dispute here centers on how Central States should account for the 1984 withdrawal

---

[3] Recall that the 1990 assessment is still pending in arbitration, ten years later.

liability assessed against Manning in computing the current one. ERISA provides that a fund must grant a credit based on the previous assessment. *See* 29 U.S.C. § 1386(b). Central States did not include any credit in its computations. Manning asserts that the law is clear and that plaintiffs' refusal to grant a credit is groundless. Plaintiffs, however, offer three justifications for their decision: the original assessment is uncollectible; the original assessment is still in arbitration; and any credit deriving from the original assessment would have been amortized to zero.

First, Central States argues that Manning is not entitled to a credit because the earlier assessment is uncollectible. They cite the provision allowing for adjustments to the credit, "[i]f an employer's withdrawal liability for a prior partial withdrawal has be reduced or waived." 29 C.F.R. § 4206.8. Like accounts receivable, plaintiffs contend, it is appropriate to "reduce" an assessment to account for uncollectible debts. Manning retorts that the statute requires credits for past "liability," not "payment." 29 U.S.C. § 1386(b)(1). There is nothing, argue defendants, in either the statutes or regulations that authorizes a fund to unilaterally refuse to grant a credit. Rather, the regulations provide a procedure for "abating" an assessment. 29 C.F.R. § 4208.6. The parties agree that Central States has not waived or abated the 1984 liability (plfs. resp. to def. stmt. of uncontested facts #4). Neither party cites any caselaw endorsing its interpretation.

Second, Central States argues that Manning cannot claim a credit for an assessment that is still locked in arbitration. If the arbitrator rules for Manning there will be no prior assessment and, hence, nothing to credit. Manning responds that the assessment stands until formally altered. It is not tolled by a challenge. Again, neither party cites any supporting

caselaw.

Third, the parties dispute how Central States should calculate any credit. The regulations permit a fund to amortize a credit over time. *See* 29 C.F.R. §§ 4206.1-9. Central States argues that a five-year amortization period applies, and that a credit arising from a 1984 withdrawal would reach zero dollars by 1989, long before the 1993 withdrawal. Consequently, there would be no credit. Manning counters that a ten-year period must apply, meaning that there would still have been a portion of the credit remaining in 1993.

We will not address the merits directly. That is the arbitrator's function.[4] If any of Central States' three claims appears to have some merit, then we may not intervene. In fact, two pass muster. The Seventh Circuit recently resolved the amortization question. Central States must use the 10 year calculation. *See* Central States, Southeast and Southwest Areas Pension Fund v. Safeway, Inc., 2000 WL 1481134 (7th Cir. Oct. 6, 2000). With this new binding precedent, Manning would clearly prevail before the arbitrator on this point.

Central States' first two arguments, however, are both plausible. Manning has not shown us precedent on either point making it "almost certain" that they will prevail before the arbitrator. Defendants may ultimately prevail, but there is an arguable basis for Central States' position. We have no grounds for removing this case from the arbitration process prescribed by Congress.

Because the claim is not frivolous, whether interim payments will cause Manning

---

[4] The arbitrator should be the first to review questions of law, as well as questions of fact. A court should not intervene just because a question is primarily legal. *See, e.g.*, Mason & Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 164-65 (6th Cir. 1988) (collecting cases from other circuits). Disputes over how the fund computed withdrawal liability, given the intricate regulations, are particularly apt for arbitration. *See* Central Transport, 935 F.2d at 118.

irreparable harm is immaterial. The McNicholas exception cannot apply unless defendants satisfy both parts. Interim payments may well force Manning into bankruptcy. But we must enforce Congress' judgment that it is better, for all employees, to require payment up-front.

Lastly, we address plaintiffs' request for attorney fees, costs and liquidated damages. If a fund prevails in a suit to compel withdrawal liability payments, we "shall award" these remedies. 29 U.S.C. § 1132(g)(2). The statutory language is mandatory. See Central States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1377 (7th Cir. 1992). We must grant plaintiffs the requested relief.

## CONCLUSION

For reasons as above set forth, plaintiffs' motion is granted, and defendants' motion is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 25, 2000.